Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZACHARY WOODBURY,<br><br>                              Plaintiff,<br><br>             vs.<br><br>CALLON PETROLEUM COMPANY, MATTHEW R. BOB, JOSEPH C. GATTO, JR., FRANCES ALDRICH SEVILLA-SACASA, BARBARA FAULKENBERRY, ANTHONY J. NOCCHIERO, MARY SHAFER-MALICKI, STEVEN A. WEBSTER, and JAMES E. CRADDOCK,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Zachary Woodbury ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Callon Petroleum Company ("Callon" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of

- 1 -

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to APA Corporation ("Parent") through merger vehicle Astro Comet Merger Sub Corp., a wholly owned subsidiary of Parent, ("Merger Sub," and together with Parent, "APA"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a January 4, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each outstanding share of common stock of Callon will be converted into the right to receive, without interest, 1.0425 shares of common stock of APA, with cash in lieu of fractional shares.  As a result of the Proposed Transaction, Callon will become a wholly owned subsidiary of APA.

3.     Thereafter, on February 1, 2024, in support of the Proposed Transaction, the Company and APA caused to be filed with the SEC a Form S-4 attaching the Registration Statement. On February 13, 2024, in support of the Proposed Transaction, the Company and APA filed with the SEC a Form S-4/A attaching the Amended Registration Statement (together, the "Registration Statement").

4.     The Proposed Transaction is unfair for a number of reasons.  Notably, the Proposed Transaction does not appear to provide for a collar mechanism to keep the merger consideration value within the realm of reasonableness.

5.     The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed

below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Callon and APA, provided by Callon management to the Board and the Board's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); (c) the financial projections for Callon and APA, provided by APA management to APA's Board and the APA Board's financial advisors Citigroup Global Markets Inc. ("Citi") and Wells Fargo Securities, LLC ("WFS"); (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinion created by Morgan Stanley and provided to the Company and the Board; and (e) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions created by Citi and WFS and provided to APA and APA's Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Nevada, and at all times relevant hereto, has been a Callon stockholder.

8.      Defendant Callon is an independent oil and natural gas company, focused on the acquisition, exploration, and development of oil and natural gas properties in West Texas. Callon is incorporated in Delaware and has its principal place of business at One Briarlake Plaza, 2000 West Sam Houston Parkway South, Suite 2000, Houston, TX 77042. Shares of Callon common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "CPE."

9.      Defendant Matthew R. Bob ("Bob") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

- 3 -

10.     Defendant Joseph C. Gatto, Jr. ("Gatto") has been a director of the Company at all relevant times. Defendant Gatto also serves as the Company's President and Chief Executive Officer ("CEO").

11.     Defendant Frances Aldrich Sevilla-Sacasa ("Sevilla-Sacasa") has been a director of the Company at all relevant times.

12.     Defendant Barbara Faulkenberry ("Faulkenberry") has been a director of the Company at all relevant times.

13.     Defendant Anthony J. Nocchiero ("Nocchiero") has been a director of the Company at all relevant times.

14.     Defendant Mary Shafer-Malicki ("Shafer-Malicki") has been a director of the Company at all relevant times.

15.     Defendant Steven A. Webster ("Webster") has been a director of the Company at all relevant times.

16.     Defendant James E. Craddock ("Craddock") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent APA Corporation owns consolidated subsidiaries that explore for and produce oil and natural gas in the United States, Egypt and the United Kingdom and that explore for oil and natural gas offshore Suriname.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Defendant Callon operates as an independent oil and natural gas company, focused on the acquisition, exploration, and development of oil and natural gas properties in West Texas. The Company was founded in 1950 and is headquartered in Houston, Texas.

24.     The Company's recent third quarter 2023 results press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the report of the third quarter 2023

financial results dated November 1, 2023, the Company highlighted such milestones as: Generated $266.8 million of net cash provided by operating activities; Adjusted free cash flow of $48.3 million, marking 14 consecutive quarters of adjusted free cash flow generation; and Capital expenditures of $251 were at the low end of guidance.

25.     Speaking on these positive results, Defendant, President, and CEO Gatto commented on the Company's positive results as follows, "The third quarter marked an important milestone for Callon as we completed a reorganization of our operations group into a business unit design to improve focus on capital efficiency and capital allocation."

26.     Gatto continued, saying "We have delivered tangible benefits from this move in a short period of time, especially in terms of structural drilling efficiency gains from well design changes. We now expect to complete approximately 50,000 more lateral feet and commence drilling an incremental five wells relative to our mid-year forecast. This additional activity will benefit 2024 production, all while staying within our existing budget. These gains position us well heading into 2024 and set the stage for incremental structural efficiency gains as the year progresses. We expect these improvements will reduce our 2024 average total well costs, including facilities, by over 15%. Our focus into next year remains unchanged -- generate free cash flow, reduce debt, lower costs and return cash to our owners under our share repurchase program."

27.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Callon.

28.     Despite this upward trajectory, the Individual Defendants have caused Callon to enter into the Proposed Transaction without providing requisite information to Callon stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

30.     Notably, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

31.     The Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and APA, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     Finally, the Registration Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On January 4, 2024, Callon and APA issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> HOUSTON, Jan. 4, 2024 /PRNewswire/ -- (BUSINESS WIRE) -- APA Corporation ("APA" or the "Company") (NASDAQ: APA) and Callon Petroleum Company ("Callon") (NYSE: CPE) have entered into a definitive agreement under which APA will acquire Callon in an all-stock transaction valued at approximately

$4.5 billion, inclusive of Callon's net debt. Under the terms of the transaction, each share of Callon common stock will be exchanged for a fixed ratio of 1.0425 shares of APA common stock. The transaction is expected to be accretive to all key financial metrics and add to APA's inventory of high quality, short-cycle opportunities. Callon's assets provide additional scale to APA's operations across the Permian Basin, most notably in the Delaware Basin, where Callon has nearly 120,000 acres. On a pro forma basis, total company production exceeds 500,000 BOE per day and enterprise value increases to more than $21 billion.*

**Key Highlights**

- Combination of Callon's Delaware-focused footprint with APA's Midland-focused footprint provides scale and balance in the Permian Basin;

- APA's oil-prone acreage in the Midland and Delaware Basin combined will increase by more than 50% following the transaction;

- Expected to be accretive on key financial and value metrics;

- Estimated overhead, operational and cost-of-capital synergies to exceed $150 million annually; and

- Additional scale anticipated to improve credit profile; pro forma balance sheet will remain strong with leverage at 1.1x net debt / adjusted EBITDAX.**

**Management Commentary**

"This transaction is aligned with APA's overall portfolio strategy and fits all the criteria of our disciplined approach to evaluating external growth opportunities. Callon has built a strong portfolio in the Permian Basin that is complementary to our existing Permian assets and rounds out our opportunity set in the Delaware," said John J. Christmann IV, APA's CEO and president. "The acquisition is accretive and unlocks value for both shareholder bases, as increased scale will enable us to realize significant overhead and cost-of-capital synergies. The pro forma footprint in the Permian will also create opportunities to capture meaningful operating synergies."

"We are very proud of the significant steps we have taken to enhance Callon's asset base, operational performance and balance sheet over the past several years," said Joe Gatto, Callon's president and CEO. "This combination with APA now provides for an enhanced value proposition for our shareholders built on their depth of experience and strong execution in the Permian Basin, flexibility for increased capital allocation, and ongoing delineation and optimization efforts. Importantly, I would like to personally thank each and every Callon employee for their role in building this company. I am very proud of this team and what we have achieved together."

**Combined Permian Asset Position and Preliminary 2024 Planned Activity**

Pro forma average daily Permian Basin production was 311 Mboe/d in 3Q 2023, which represents a 48% increase from APA's Permian Basin production on a standalone basis. APA's oil production as a percentage of BOE's in the Permian increases from approximately 37% to 43% in 3Q 2023, on a pro forma basis.

APA will provide additional activity plans and details post closing.

**Transaction Details**

In this all-stock transaction, each outstanding share of Callon common stock will be exchanged for 1.0425 shares of APA common stock, representing an implied value to each Callon share of $38.31 per share based on the closing price of APA common stock on Jan. 3, 2024. APA is expected to issue approximately 70 million shares of common stock in the transaction. After closing, existing APA shareholders are expected to own approximately 81% of the combined company and existing Callon shareholders are expected to own approximately 19% of the combined company. APA expects to retire the existing debt at Callon and replace it with APA term loan facilities totaling $2.0 billion. The term loan facilities are expected to offer improved optionality for near-term debt reduction. JPMorgan Chase Bank, N.A., Citigroup Global Markets Inc. and Wells Fargo Bank, National Association, LLC have jointly provided $2.0 billion of committed financing for the deal.

The transaction has been unanimously approved by the Boards of Directors of both APA and Callon and is expected to close during the second quarter of 2024, subject to customary closing conditions, termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and approval of the transaction by shareholders of both APA and Callon. Upon the closing of the transaction, a representative from Callon will join the APA board. APA's executive management team will lead the combined company with the headquarters remaining in Houston, Texas.

*Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicates that Callon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Callon.

- 9 -

36.     The Registration Statement fails to provide a breakdown of the shares of Company Common Stock held by its Directors and Executives. Furthermore, the Registration Statement is equally silent as to the breakdown of the consideration each of the above-mentioned Directors and Executives members will receive pursuant to the Proposed Transaction.

37.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| | Number of Shares Subject to Vested Callon RSUs | Estimated Value of Vested Callon RSUs[1] | Number of Shares Subject to Unvested Callon RSUs | Estimated Value of Unvested Callon RSUs[1] |
|---|---|---|---|---|
| *Executive Officers* | | | | |
| Joseph C. Gatto, Jr. | — | — | 88,072 | $ 2,991,806 |
| Kevin Haggard | — | — | 52,558 | $ 1,785,395 |
| Russell Parker | — | — | 54,727 | $ 1,859,076 |
| Michol Ecklund | — | — | 46,836 | $ 1,591,019 |
| Gregory Conaway | — | — | 12,095 | $ 410,867 |
| *Directors*[2] | | | | |
| Frances Aldrich Sevilla-Sacasa | — | | — | — | — |
| Matthew R. Bob | 4,666 | $ 158,504 | — | — |
| James E. Craddock | — | | — | — | — |
| Barbara J. Faulkenberry | 4,666 | $ 158,504 | — | — |
| Mary Shafer-Malicki | — | | — | — | — |
| Anthony J. Nocchiero | 4,666 | $ 158,504 | — | — |
| Steven A. Webster | — | | — | — | — |

| Name | Estimated Value of Callon CPUs |
|---|---|
| *Executive Officers* | |
| Joseph C. Gatto, Jr. | $7,853,400 |
| Kevin Haggard | $3,263,700 |
| Russell Parker | $1,440,000 |
| Michol L. Ecklund | $2,418,150 |
| Gregory F. Conaway | $1,038,780 |

| Name | Number of Shares Subject to Callon Phantom Stock Units | Estimated Value of Callon Phantom Stock Units[1] |
|---|---|---|
| *Directors* | | |
| Frances Aldrich Sevilla-Sacasa | 12,998 | $   441,542 |
| Matthew R. Bob | — | — |
| James E. Craddock | 4,666 | $   158,504 |
| Barbara J. Faulkenberry | — | — |
| Mary Shafer-Malicki | 8,944 | $   303,828 |
| Anthony J. Nocchiero | — | — |
| Steven A. Webster | 20,846 | $   708,139 |

38.     Moreover, certain employment agreements with certain Callon executives entitle such executives to certain Merger-Related Compensation and severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Merger-Related Compensation**

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Joseph C. Gatto, Jr. | $16,356,595 | $6,388,806 | $   51,299 | $22,796,700 |
| Kevin Haggard | $  6,101,573 | $1,785,395 | $   51,636 | $  7,938,604 |
| Michol L. Ecklund | $  4,941,304 | $1,591,019 | $   51,156 | $  6,583,479 |
| Gregory F. Conaway | $  2,768,348 | $   410,867 | $   51,744 | $  3,230,959 |

| Name | Severance | Pro Rata Bonus | Earned but Unpaid 2023 Bonus | Estimated Value of Callon CPUs |
|---|---|---|---|---|
| Joseph C. Gatto, Jr. | $7,228,659 | $84,536 | $1,190,000 | $7,853,400 |
| Kevin Haggard | $2,298,070 | $35,803 | $   504,000 | $3,263,700 |
| Michol L. Ecklund | $2,056,610 | $30,944 | $   435,600 | $2,418,150 |
| Gregory F. Conaway | $1,425,125 | $20,193 | $   284,250 | $1,038,780 |

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Callon, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     The Callon Board and APA caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.      Adequate information as to why the Board agreed to a Proposed Transaction that did not contain a collar mechanism;

b.      Whether the confidentiality agreements entered into by the Company with APA differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c.      All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including APA, would fall away; and

d.      Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning Callon and APA Financial Projections*

43.     The Registration Statement also fails to provide material information concerning financial projections for Callon and APA provided by Callon management to the Board and Morgan Stanley and relied upon by Morgan Stanley in their analyses.

44.     Notably, the Registration Statement reveals that, as part of its analyses, Morgan Stanley reviewed, among other things: "Certain internal financial analyses and forecasts for Callon prepared by its management, as approved by Morgan Stanley' used by Callon."

45.     The Registration Statement should have, but fails to provide, certain information in the projections that Callon management provided to the Board and Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46.     With regard to *Callon Forecasted Financial Information,* prepared by Callon, the Registration Statement fails to disclose material line items, including the following:

a.  For *Callon Management Projections for Callon*, disclose:

    i.  The underlying inputs, metrics, and assumptions used to determine Callon's Total Revenue for Case A;

    ii.  The underlying inputs, metrics, and assumptions used to determine Adjusted EBITDAX for Case A;

    iii.  The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow for Case A;

    iv.  The underlying inputs, metrics, and assumptions used to determine Callon's Total Revenue for Case B;

    v.  The underlying inputs, metrics, and assumptions used to determine Adjusted EBITDAX for Case B; and

    vi.  The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow for Case B.

b.  For *Callon Management Projections for APA*, disclose:

    i.  The underlying inputs, metrics, and assumptions used to determine Callon's Total Revenue for Case A;

    ii.  The underlying inputs, metrics, and assumptions used to determine Adjusted EBITDAX for Case A;

    iii.  The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow for Case A;

    iv.  The underlying inputs, metrics, and assumptions used to determine Callon's Total Revenue for Case B;

    v.  The underlying inputs, metrics, and assumptions used to determine

Adjusted EBITDAX for Case B; and

vi. The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow for Case B.

47. The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

49. The Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

50. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without complete and accurate projection data for Callon or APA being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of Goldman Sach's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley_

52. In the Registration Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

53.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.  For *Callon Discounted Cash Flow Analysis*, disclose:

        i.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 10.3% to 11.6% utilized;

        ii.  Callon's weighted average cost of capital utilized;

        iii.  The inputs, metrics, and assumptions used to determine Callon's net asset value, including specifically: net debt, cash-settled awards, asset retirement obligations, and net working capital; and

        iv.  The number of fully diluted shares of Callon common stock outstanding as of January 2, 2024.

    b.  For *APA Discounted Cash Flow Analysis*, disclose:

        i.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 10.3% to 11.6% utilized;

        ii.  APA's weighted average cost of capital utilized;

        iii.  The inputs, metrics, and assumptions used to determine APA's net asset value, including specifically: net debt, cash-settled awards, asset retirement obligations, and net working capital; and

        iv.  The number of fully diluted shares of APA common stock outstanding as of January 2, 2024.

54.     With respect to the *Comparable Company Analysis*, the Proxy Statement fails to disclose:

      a.  For *Comparable Companies of Callon,* disclose:

           i.  The specific metrics observed for each comparable company;

           ii.  The inputs, metrics and assumptions used to determine the multiples reference ranges of 2.5x – 3.5x for AV/ 2024E EBITDAX and 2.5x – 3.5x for AV/ 2025E EBITDAX; and

           iii.  The inputs, metrics, and assumptions used to determine the reference range of 2.0x – 3.0x for P/ 2024E Operating Cash Flow Per Share and 2.0x – 3.0x for P/ 2025E Operating Cash Flow Per Share.

      b.  For *Comparable Companies of APA*, disclose:

           i.  The specific metrics observed for each comparable company;

           ii.  The inputs, metrics and assumptions used to determine the multiples reference ranges of 3.0x – 4.0x for AV/ 2024E EBITDAX and 3.0x – 4.0x for AV/ 2025E EBITDAX; and

           iii.  The inputs, metrics, and assumptions used to determine the reference range of 3.0x – 3.5x for P/ 2024E Operating Cash Flow Per Share and 3.0x – 3.5x for P/ 2025E Operating Cash Flow Per Share.

55.     With respect to the *Precedent Transactions Analysis*, the Registration Statement fails to disclose:

      a.  The specific date on which each transaction closed;

      b.  The aggregate value of each selected precedent transaction;

    c.   The specific inputs, metrics, and assumptions used to derive Callon's AV to Estimated 2023 Adj. EBITDAX reference range of 3.0x – 4.0x utilized

    d.   The number of fully diluted shares of Callon as of January 2, 2024, utilized;

    e.   The specific inputs, metrics, and assumptions used to derive APA's AV to Estimated 2023 Adj. EBITDAX reference range of 4.0x – 5.0x utilized; and

    f.   The number of fully diluted shares of APA as of January 2, 2024, utilized.

56. With respect to the *Equity Research Valuation*, the Registration Statement fails to disclose:

    a.   The specific sell-side analyst price targets analyzed with respect to Callon's valuation;

    b.   The specific Wall Street firms that published the analyzed price targets with respect to Callon;

    c.   The specific sell-side analyst price targets analyzed with respect to APA's valuation; and

    d.   The specific Wall Street firms that published the analyzed price targets with respect to APA.

57. With respect to the *Implied Exchange Ratios Analysis,* the Registration Statement fails to disclose:

    a.   The number of fully diluted shares of Callon Common Stock outstanding as of January 2, 2024; and

    b.   The number of fully diluted shares of APA Common Stock outstanding as of January 2, 2024.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

58.     In the Registration Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

59.     With respect to the *Net Asset Value Analysis*, the Registration Statement fails to disclose:

   a.   For *APA – Net Asset Value Analysis*, disclose:

      i.   The inputs, metrics, and assumptions used to determine the discount rates range of 8.9% to 9.6% utilized;

      ii.  APA's weighted average cost of capital utilized; and

      iii. The inputs, metrics, and assumptions used to determine APA's implied equity value range.

   b.   For *Callon – Net Asset Value Analysis*, disclose:

      i.   The inputs, metrics, and assumptions used to determine the discount rates range of 9.4% to 10.3% utilized;

      ii.  Callon's weighted average cost of capital utilized; and

      iii. The inputs, metrics, and assumptions used to determine Callon's implied equity value range.

60.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

   a.   For *APA Discounted Cash Flow Analysis*, disclose:

      i. The inputs, metrics, and assumptions used to determine the EBITDA multiples range of 3.6x – 4.3x utilized;

      ii. The inputs, metrics, and assumptions used to determine the discount rates ranging from 8.9% to 9.6% utilized;

      iii. APA's weighted average cost of capital utilized; and

      iv. The inputs, metrics, and assumptions used to determine APA's terminal values as of September 30, 2023.

    b. For *Callon Discounted Cash Flow Analysis*, disclose:

      i. The inputs, metrics, and assumptions used to determine the EBITDA multiples range of 2.8x – 3.7x utilized;

      ii. The inputs, metrics, and assumptions used to determine the discount rates ranging from 9.4% to 10.3% utilized;

      iii. Callon's weighted average cost of capital utilized; and

      iv. The inputs, metrics, and assumptions used to determine Callon's terminal values as of September 30, 2023.

61. With respect to the *Selected Public Company Analysis*, the Proxy Statement fails to disclose:

    a. For *Selected Companies for APA,* disclose:

      i. The specific metrics observed for each comparable company; and

      ii. The inputs, metrics and assumptions used to determine the 2024 estimated adjusted EBITDA multiples reference range of 3.1x to 4.0x utilized.

    b. For *Selected Companies for Callon*, disclose:

      i.   The specific metrics observed for each comparable company; and

      ii.   The inputs, metrics and assumptions used to determine the 2024 estimated adjusted EBITDA multiples reference range of 2.7x to 3.6x utilized.

62.     With respect to the *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose:

     a.   The specific date on which each transaction closed;

     b.   The aggregate value of each selected precedent transaction; and

     c.   The specific inputs, metrics, and assumptions used to determine Callon's 2024E EBITDA multiple range of 2.7x to 3.2x utilized.

63.     With respect to the *Equity Research Valuation*, the Registration Statement fails to disclose:

     a.   For *Equity Research for APA*, disclose:

        i.   The specific sell-side analyst price targets analyzed with respect to APA's valuation;

        ii.   The specific Wall Street firms that published the analyzed price targets with respect to APA;

     b.   For *Equity Research for Callon*, disclose:

        i.   The specific sell-side analyst price targets analyzed with respect to Callon's valuation; and

        ii.   The specific Wall Street firms that published the analyzed price targets with respect to Callon.

64.     With respect to the *Selected Precedent Transaction Premiums Analysis,* the Registration Statement fails to disclose the specific inputs, metrics, and assumptions used to determine the premiums range of 0.4% to 17.8% utilized.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by WFS*

65.     In the Registration Statement, WFS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

66.     With respect to the *Selected Public Company Analysis*, the Proxy Statement fails to disclose:

    a.  For *Selected Companies for Callon,* disclose:

        i.  The specific metrics observed for each comparable company; and

        ii.  The inputs, metrics and assumptions used to determine the 2024E EBITDA and 2025E EBITDA multiples reference range of 3.00x to 3.75x utilized.

    b.  For *Selected Companies for APA*, disclose:

        i.  The specific metrics observed for each comparable company; and

        ii.  The inputs, metrics and assumptions used to determine the 2024E EBITDA and 2025E EBITDA multiples reference range of 3.00x to 4.00x utilized.

67.     With respect to the *Net Asset Value Analysis*, the Registration Statement fails to disclose:

    a.  For *Callon Net Asset Value Analysis*, disclose:

        i.  The inputs, metrics, and assumptions used to determine the discount rates range of 9.5% to 12.0% utilized; and

        ii.  Callon's weighted average cost of capital utilized.

    b.  For *APA Net Asset Value Analysis*, disclose:

        i.  The inputs, metrics, and assumptions used to determine the discount rates range of 8.0% to 9.5% utilized; and

        ii.  APA's weighted average cost of capital utilized.

    c.  For *Pro Forma Net Asset Value Analysis,* disclose:

        i.  The inputs, metrics, and assumptions used to determine the discount rates range of 8.0% to 9.5% utilized.

68.     With respect to the *Equity Research Valuation*, the Registration Statement fails to disclose:

    c.  For *Equity Research for Callon*, disclose:

        iv.  The specific sell-side analyst price targets analyzed with respect to Callon's valuation;

        v.  The specific Wall Street firms that published the analyzed price targets with respect to Callon;

    d.  For *Equity Research for APA*, disclose:

        vi.  The specific sell-side analyst price targets analyzed with respect to APA's valuation; and

vii.  The specific Wall Street firms that published the analyzed price targets with respect to APA.

69.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

70.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Callon stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

73.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

74.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

75.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

76.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

77.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

78.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### <u>(Against all Individual Defendants)</u>

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

81.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

82.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Callon's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a

result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

83.     The Individual Defendants acted as controlling persons of Callon within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Callon to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Callon and all of its employees.  As alleged above, Callon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 20, 2024                    **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*